UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 16-097-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ARIAN LAMONT BROWN, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On November 3, 2016, a federal grand jury returned a two-count indictment charging Defendant Arian Lamont Brown with possessing with the intent to distribute fentanyl and heroin in violation of 21 U.S.C. § 841(a)(1). [Record No. 1] The matter is now pending for consideration of Brown's motion to suppress certain evidence from being presented during the upcoming jury trial. [Record No. 23] For the reasons discussed below, the motion to suppress will be denied.

## I.     Background

On August 24, 2016, Detective Jared Curtsinger, a 14-year veteran of the Lexington Police Department, applied for a warrant to search Brown's apartment, garage, and vehicles. [Record No. 23–4, p. 1] The affidavit used to secure the warrant stated the following information in support:

One month earlier, Detective Curtsinger executed a search warrant at a residence in Lexington, Kentucky and seized a large quantity of heroin. *Id.* at p. 2. The suspect charged with trafficking heroin in that incident wished to cooperate with the investigation. *Id.* The

suspect advised Curtsinger that he had been selling large quantities of heroin to a male in his thirties known as "Lamont" or "Arian." The suspect also told Curtsinger that "Lamont" worked at L.A. Fitness and drove a red Camaro with black racing stripes. *Id.* The suspect produced a phone number, which was stored in the suspect's phone under the name "Lamont." *Id.* Curtsinger verified through police records that Defendant Brown had provided the same phone number in prior contacts with police. *Id.* at p. 3. Curtsinger drove to L.A. Fitness and observed a red Camaro with black racing stripes, which was registered to Defendant Brown. *Id.*

Approximately one week later, Curtsinger received a telephone call from a qualified confidential information ("CI")—a different individual than the suspect involved in the events of the previous week. *Id.* at p. 3. The CI advised Curtsinger that Brown was living at Beaumont Farm Apartments, Apartment 12205, with his girlfriend (Brittany Glisson) and that he was selling large amounts heroin, which he kept in the apartment. *Id.* The CI further advised that Brown delivered the heroin to nearby parking lots using his red Camaro, his white Chrysler 300, and his motorcycle. The CI provided Detective Curtsinger the same telephone number for Brown that the original suspect had provided and advised that Brown worked at L.A. Fitness. *Id.*

After receiving the information from the CI, Detective Curtsinger went to Beaumont Farm Apartments on several nights and observed a red Camaro with black racing stripes, which was parked near Apartment 12205. *Id.* The Camaro, which was the same car Curtsinger had observed at L.A. Fitness the previous week, was registered to Arian Brown. *Id.* at p. 3. Curtsinger observed a white Chrysler 300 parked nearby, which also was registered to Brown. *Id.*

Two days before requesting the search warrant, Curtsinger returned to Beaumont Farms Apartments and observed an individual he recognized as Brown riding a blue and silver Yamaha motorcycle into the apartment complex. *Id.* at p. 4. Curtsinger arranged for Detective Mark Evans to meet with the CI for the purpose of conducting a controlled buy of heroin from Brown. While Evans met with the CI, Curtsinger remained at Beaumont Farms Apartments and conducted surveillance of Apartment 12205. *Id.* As Detective Evans listened, the CI called Brown and ordered a quantity of heroin. Approximately ten minutes later, Curtsinger observed Brown and Glisson exit Apartment 12205 and get into the white Chrysler 300. *Id.* at p. 5. The two traveled to a nearby parking lot where Detective Evans observed Brown get into a vehicle with the CI. Evans followed the CI to a predetermined meeting spot where the CI provided Evans with the amount of heroin the CI had allegedly purchased from Brown. *Id.*

Detective Curtsinger then arranged for a second controlled purchase of heroin from Brown. *Id.* Again, Curtsinger conducted surveillance of Apartment 12205 while Evans remained with the CI. Approximately ten minutes after the CI called Brown and ordered a quantity of heroin, Curtsinger observed Brown ride into the parking lot of the apartment building on his motorcycle. *Id.* Brown parked, used a key to enter Apartment 12205, and remained inside for approximately five minutes. *Id.* At that point, Brown left the area and the controlled buy was completed in similar fashion as the earlier transaction.

Based on this information, Curtsinger believed that evidence of illegal narcotic trafficking and possession would be located in Apartment Number 12205. A warrant was issued on August 24, 2016. The following day, Detective Curtsinger and other officers executed the warrant. Officers seized heroin and other contraband which were located inside

the apartment.  [Record No. 23–1]  The defendant contends that all evidence seized should be suppressed because the search warrant failed to establish probable cause.

## II.     Analysis

The Fourth Amendment to the United States Constitution provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ."  U.S. CONST. AMEND. IV.  "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion and is found to exist where there is a fair probability that evidence of a crime will be located on the premises of the proposed search."  *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (internal citations and quotation marks omitted).  Search warrant affidavits will be reviewed based on the totality of the circumstances and review is limited to the four corners of the affidavit.  *Id.*  (citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)).  A magistrate's determination of probable cause is given great deference and will be reversed only if made arbitrarily.  *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004).

The defendant's chief argument is that the affidavit did not contain sufficient facts connecting evidence of illegal activity to his apartment.  He contends that the affidavit contains only "speculation and conclusion" that drugs would be found in the apartment, rather than in some other place, such a Brown's vehicle.  Brown points to the fact that, with respect to the second controlled purchase, the affidavit does not describe the method of transportation Brown used to leave the residence to go and meet with the qualified CI.  Further, he contends that the affidavit does not state how much time elapsed between Brown's leaving the apartment and arriving at the meeting spot.  The implication is that the defendant could have stopped and

picked up drugs along the way and, therefore, the facts alleged are insufficient to tie the *apartment* to narcotics trafficking.

The Fourth Amendment requires a search warrant to describe with particularity the place to be searched and the person or things to be seized. *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). Accordingly, the affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched. *Id.* In other words, the affidavit must provide sufficient facts showing why the police officer expects to find evidence in the place to be searched, rather than some other place. *Id.*

Here, Detective Curtsinger's affidavit provided several facts that tied Brown's residence to the alleged drug trafficking. After one cooperating individual advised Curtsinger that he had personally sold large amounts of heroin to Brown, a qualified confidential informant reported that Brown stored large amounts of heroin in his apartment. [Record No. 23–4, p. 3] Then, just after arranging a controlled purchase of heroin, Curtsinger observed Brown exiting the apartment. *Id.* at p. 5. According to Curtsinger, another officer observed Brown completing the controlled transaction shortly thereafter.

Brown was not at the apartment prior to the second controlled buy. Detective Curtsinger saw Brown return to the apartment and remain inside for approximately five minutes before going to the meeting location to make the controlled transaction. The defendant's status as an alleged drug dealer, standing alone, does not give rise to a fair probability that drugs will be found in his home. *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005). *See also Brown*, 828 F.3d at 383–84. *But see United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) ("In the case of drug dealers, evidence is likely to be found where the

- 5 -

dealers live."). However, courts are entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the crime and the type of offense. *United States v. Young*, 847 F.3d 328, 346 (6th Cir. 2017) (citing *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008)). Further, Brown's presence at the apartment, especially his need to return there prior to making a sale to the CI, suggests that drugs were located in the apartment. This information, along with the results of Detective Curtsinger's surveillance, and the information provided by the informants, constitutes probable cause to support the search warrant.

Based on the foregoing, it is hereby

**ORDERED** that the defendant's motion to suppress [Record No. 23] is **DENIED**.

This 20th day of March, 2017.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge