UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Criminal Action No. 5: 16-97-DCR |
| V. | ) | |
| ARIAN LAMONT BROWN, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Presentence Investigation Report ("PSR") prepared in this matter by the United States Probation Office designates Defendant Arian Brown as a Career Offender under the United States Sentencing Guidelines ("USSG"), § 4B1.1. Under that section,

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1(a) (2016).

Definitions for the terms used in this section of the guidelines are contained in USSG § 4B1.2. The term "crime of violence" is defined as:

Any offense under federal or state law, punishable by imprisonment for a term exceeding one year that –

(1) has as an element, the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful

possession of a firearm as described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

USSG § 4B1.2(a) (2016). Application Notes in the Commentary to this section provides additional definitions and guidance. More specifically, Application Note 1 states that "crime of violence" includes the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.

Defendant Brown does not contest that he was older than eighteen at the time of the commission of the instant offense or that the instant offense is a qualifying controlled substance offense. However, he contends that he should not be designated as a Career Offender under the guidelines because the conviction outlined in paragraph 45 of his PSR does not constitute one of two necessary predicate crimes of violence. The PSR provides as follows with respect to the conviction being challenged:

|     | **Date of Arrest** | **Conviction/Court** | **Date Sentence Imposed/Disposition** | **Guideline** | **Pts** |
| --- | --- | --- | --- | --- | --- |
| 45. | 05/16/13 (Age 19) | 1-2) Conspiracy to Commit Robbery-1st Degree<br>Fayette County County Circuit Court, Lexington, KY, Docket No.: 04-CR-00300-002 | 05/10/2004; 10 years prison, concurrent<br><br>07/18/2008 Paroled<br><br>01/25/2013: Returned parole violator<br><br>09/16/14: Discharged | 4A1.1(a) | 3 |

This case originated from Fayette County District Court, Case No. 04-00283. A criminal complaint filed by a Lexington Police Department (LPD) detective on May 16, 2003, indicated that police had responded to the residence of Jose Hernandez-Vasquel on said date after said victim had reportedly been robbed and shot in the face. Subsequent investigation revealed witnesses had allegedly stated that Brown and others had approached the victim's home with the intent to rob him. Hernandez-Vasquel was later pronounced dead as a result of a gunshot on May 29, 2003. Thereafter, the defendant was indicted for Murder in Fayette County Circuit Court, Case No. 04-CR-00356 and indicted on Counts

One and Two of Robbery-1st Degree and Burglary in Fayette County Court Case No. 04-CR-300. Ultimately, the Murder charge was dismissed on March 14, 2004, and he was found guilty of two counts of Robbery (as referenced above). The Burglary charge was dismissed. Specifically, in reference to Count One, the indictment stated that, on April 24, 2003, Adrian Brown, Arian Brown, Reginald Bush, and Giles Coles committed First Degree Robbery when, in the course of committing a theft, threatened the use of physical force upon Tammy Sanders and Chris Manley with intend to accomplish the theft and when they were armed with deadly weapons. Count Two stated that, on May 16, 2003, Adrian Brown, Arian Brown, Reginald Bush, and Giles Coles use of physical force upon Jose Hernandez-Vasquel with intent to accomplish a theft and when they were armed with deadly weapons. According to the Kentucky Department of Corrections, the defendant was committed on May 18, 2004, and paroled on July 18, 2008. He was returned as a parole violator on January 25, 2013, and was discharged on September 16, 2014, after reaching his minimum discharge date.

[PSR, p. 12, ¶ 45][1]

Brown is incorrect in asserting that his conviction for conspiracy to commit first degree robbery under Kentucky law does not constitute a crime of violence under the applicable United States Sentencing Guidelines. Recently, in *United States v. Ingram*, 2017 WL 3699862 (U.S. Dist. Ct., EDKY, Aug. 25, 2017, amended Dec. 28, 2017), the undersigned explained why a conviction under Kentucky's first-degree robbery statute, Ky. Rev. Stat. ("KRS") § 515.020, is categorically a crime of violence. The Court borrows and quotes heavily from that opinion in addressing the issue raised by Defendant Brown.

The first-degree robbery statute, in effect since January 1, 1975, reads:

---

[1] Although the facts underlying the offense would appear to the casual observer to clearly constitute a crime of violence, the Court does not look to those facts (*i.e.*, robbing and shooting a victim in the face, causing his death) in accordance with Supreme Court authority. Instead, the Court considers whether the conviction for conspiracy to commit first degree robbery under Kentucky law is a crime of violence. In other words, the Court considers the elements of the offense rather than the means used to carry out the crime. The Court does not consider the nature of the crime (*i.e.*, the undisputed facts surrounding the conviction) until the matter is analyzed under the relevant statutory factors contained in 18 U.S.C. § 3553(a).

> (1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:
>
> > (a) Causes physical injury to any person who is not a participant in the crime; or
>
> > (b) Is armed with a deadly weapon; or
>
> > (c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.
>
> (2) Robbery in the first degree is a Class B felony.

Ky. Rev. Stat. ("KRS") § 515.020. "Physical force," in turn, is defined as "force used upon or directed toward the body of another person." KRS § 515.010. Second-degree robbery contains the same elements as § 515.020(1), but does not require any of the aggravating factors. *See* KRS § 515.030; 1974 Kentucky Crime Commission/LRC Commentary ("For conviction of [robbery in the first degree], the prosecution must prove all of the elements of robbery in the second degree, and, in addition, one of three possible aggravating factors.").

On its face, first-degree robbery appears to meet the Armed Career Criminal Act's definition of "violent felony" in that it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). In fact, the Sixth Circuit has twice affirmed ACCA enhancements based on Kentucky first-degree robbery convictions. *See United States v. Elliott*, 757 F.3d 492 (6th Cir. 2014); *United States v. Page*, 662 F. App'x 337 (6th Cir. 2016). As noted in *Ingram, supra,* that conclusion is "about as interesting as a prediction that the sun will rise in the east tomorrow." *United States v. Duncan*, 833 F.3d 751, 752 (7th Cir. 2016) (finding Indiana robbery to be a violent felony). So much so, the defendants in *Elliott* and *Page* did not appear to challenge Kentucky first-degree robbery's status as constituting a violent felony.

Relying, in part, on: (1) the Supreme Court's opinion in *Johnson v. United States*, 559 U.S. 133 (2010), and the Sixth Circuit's decision in *United States v. Yates*, No. 16-3997, 2017 WL 3402084, at *4 (6th Cir. Aug. 9, 2017), and (2) the fact that he was convicted of *conspiracy* to commit robbery, Brown contends that the subject conviction in 2004 does not count as a crime of violence. He is wrong with respect to both issues.

First, as the undersigned explained in *Ingram*, *supra*, at p. 6-13:

> In *Yates*, the Sixth Circuit considered the present question—violent felony status—for Ohio robbery. 2017 WL 3402084. The Court held that, because "[a] 'realistic probability' exists . . . that Ohio is applying Ohio Rev. Code Ann. § 2911.02(A)(3) [Robbery] in such a way that criminalizes a level of force lower than the type of violent force required by Johnson [I] . . . Yates's conviction under that statute does not constitute a crime of violence under the guidelines' force clause." *Id.* at *7. Kentucky first-degree robbery is meaningfully different than the Ohio statute at issue in Yates. "The force criminalized by Ohio Rev. Code Ann. § 2911.02(A)(3) is defined as 'any violence, compulsion, or constraint physically exerted by any means upon or against a person.'" *Id*. at *4. For purposes of Kentucky robbery, "'[p]hysical force' means force used upon or directed toward the body of another person." KRS § 515.010. It does not include confinement. *See id*. (Kentucky Crime Commission/LRC Commentary, 1974); *Yates*, 2017 WL 3402084 at *4 (citing *United States v. Eason*, 829 F.3d 633, 641 (8th Cir. 2016), for the proposition that a statute encompassing "[b]odily impact, restraint, or confinement" falls short, on its face, of *Johnson I* force). Moreover, Kentucky first-degree robbery requires one of three aggravating factors. In addition to using or threatening immediate use of physical force, to be guilty of first-degree robbery in Kentucky, one must also "(a) [c]ause[] physical injury to any person who is not a participant in the crime; or (b) [be] armed with a deadly weapon; or (c) [use] or threaten[] the immediate use of a dangerous instrument upon any person who is not a participant in the crime." *Elliot*, 757 F.3d at 795 (quoting KRS § 515.020).

> The defendant cites *Hatton*, 2016 WL 2604806, *Jones*, 66 S.W. 633, and *Stockton*, 101 S.W. 298, for the proposition that the force required by the Kentucky robbery statute generally ("force used upon or directed toward the body of another person") does not require *Johnson I* force. However, *Jones* and *Stockton* well-predated the modern statutory scheme, and no aggravating factors were there included in the requirements for robbery. And the *Hatton* case cited by the defendant did not involve mere purse wresting. The victim was knocked to the ground and dragged several feet by a car door, sustaining injuries to her

head, neck, and torso. 2016 WL 2604806, at *1. The Kentucky Supreme Court thus affirmed *Hatton*'s conviction for first-degree robbery under the aggravating factor of "[causing] physical injury to any person who is not a participant in the crime." KRS 515.020(a)(1). Therefore, whether or not the second-degree robbery version of the statute requires *Johnson I* force, if the aggravating factors require *Johnson I* force, then Kentucky first-degree robbery is categorically a violent felony.

Ingram argues that neither the first or second aggravating factors—causing physical injury or armed with a deadly weapon—require *Johnson I* force. Regarding the second factor, Ingram points to the statutory commentary stating that "mere possession" of a firearm is sufficient to satisfy the statute. Regarding the first factor, Ingram argues that mere injury does not mean that *Johnson I* force was used. Ingram does not argue that the third factor—use or threatened use of a dangerous instrument—is insufficient under *Johnson I*.

Regarding possession of a deadly weapon ("armed with a deadly weapon"), the government points to the Sixth Circuit's holding in *United States v. Rafidi*, 829 F.3d 437 (6th Cir. 2016). *Rafidi* held that even if a criminal statute can be met by "physical contact [that] is not in itself 'capable of causing physical pain or injury,'" if it also requires "using a deadly weapon during [the]encounter [it] elevate[s the] lower degree of physical force into 'violent force' sufficient to establish" a violent felony." *Id.* at 446. To this point, Ingram responds that the statute does not require "use" of a deadly weapon, but only "mere possession" of it. Ingram cites both the statutory commentary and *Sasser v. Commonwealth*, 485 S.W.3d 290 (Ky. 2016).

However, the defendant cites to no Kentucky caselaw expressly holding that first-degree robbery may be committed by an "unseen, unused deadly weapon." *United States v. Batista*, No. 5:09CR00037, 2017 WL 2841681, at *8 (W.D. Va. June 30, 2017) (analyzing New York first-degree robbery). Perhaps that is because Kentucky caselaw suggests the gravamen of the "armed robbery" subsections of first degree robbery is the existence of a deadly weapon which invokes fear in the victim or the perpetrator's use or threatened use of a dangerous instrument.

In *Swain v. Commonwealth*, 887 S.W.2d 346, 347 (Ky. 1994), the Kentucky Supreme Court noted "[i]n all but one instance of existing case law, the object supporting the first degree robbery conviction was seen by the victim." Moreover, in the "unseen" instance, "the victim testified that a sharp point was pressed against his back, establishing the existence of a weapon or facsimile thereof." *Id.* (citing *Travis v. Commonwealth*, 457 S.W.2d 481 (1970); *Merritt v. Commonwealth*, 386 S.W.2d 727 (1965)).

In 2010, the Kentucky Supreme Court clarified that while a toy gun, for example, cannot count as a "deadly weapon," a non-operational firearm is a "deadly weapon." *Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky. 2010). *Wilburn* discussed the pre-penal code version of Kentucky first-degree robbery, KRS 433.140, "which enhanced the sentence for a robbery or burglary committed by anyone who 'uses or displays any pistol, gun, other firearm or deadly weapon' in the commission of the offense." 312 S.W.3d at 326. In further extrapolating on the statutory interpretation of the "armed with a deadly weapon" enhancement, the Court made clear that the enhancement is meant for situations where the deadly weapon intimidates the victim. For example, a non-operational firearm is sufficient for statutory purposed because "as a general common-sense rule, the robber seeks only to intimidate the victim into relinquishing his property and avoid actual use of the weapon—he wants to rob, not rob and murder." *Id.* at 328. The Court continued

> Interpreting the language to refer to the individual weapon would create a loophole allowing robbers to gain the decidedly advantageous benefit of pointing an actual pistol at the victim, but allowing him to escape the consequences of the deadly weapon enhancement to first-degree robbery by, for example, simply removing the firing pin or emptying the chamber. In view of this, the legislature could not have intended the phrase "any weapon" to refer to an individual weapon. That, quite simply, is an unreasonable interpretation. The legislation is intended to deter and punish first-degree armed robbery, not coach a robber on how to avoid the charge.

312 S.W.3d at 328-29.

Together with *Swain*, 887 S.W.2d 346, *Wilburn* offers an authoritative interpretation of the "armed with a deadly weapon" enhancement—conduct wherein the victim is intimidated by the presence of a deadly weapon. It is also logical that the statute require *use or threatened use* of a dangerous instrument, but requires only that the defendant be armed with the deadly weapon. A dangerous instrument could include something with a legitimate use, such as a bottle, so the mere presence of it does not communicate a threat. *See* KRS § 515.030; Kentucky Crime Commission/LRC Commentary, 1974.[2]

---

[2] The defendant cites *Sasser v. Commonwealth*, 485 S.W.3d 290, 297 (Ky. 2016), for the proposition that a conviction for first degree robbery does not require proof of a threat, and that possession of a firearm does not constitute a threat under the statute. In a narrow sense, that is correct. *Sasser* was analyzing a defendant's argument that the trial judge erred in not requiring an instruction for the lessor-included offense of third-degree terroristic threatening. *Id*. But because first-degree robbery may be committed by actual use of force, rather than by threatened use of force, a threat is not necessary. The Kentucky Supreme Court reasoned that,

Finally, the defendant argues that proof of physical injury does not equate to use of *Johnson I* force. He cites numerous statutes supporting what he describes as this logical fallacy. Further, he points out that first-degree robbery does not have, as an element, intent to cause injury, and that the "precise cause" of the physical injury is not required. None of these points sufficiently undermine the fact that "causing physical injury to any person who is not a participant in the crime," involves "use" of "force capable of causing physical pain or injury to another person." KRS § 515.030; 18 U.S.C. § 924(e)(2)(B)(i).

Intent to cause injury is certainly not a prerequisite to the "use, attempted use, or threatened use of physical force." As the Kentucky Supreme Court pointed out in *Wilburn*, the "the robber seeks only to intimidate the victim into relinquishing his property . . . he wants to rob, not rob and murder." 312 S.W.3d at 328. Moreover, the defendant's citation to *McNeil v. Commonwealth*, 468 S.W.3d 858, 870 (Ky. 2015), as evidence that the victim's injury need not

---

because third-degree terroristic threatening requires proof of a threat, while first-degree robbery does not require proof of a threat, third-degree terroristic threatening "is simply a separate, uncharged offense" (rather than a lessor-included offense). *Id*. To be sure, *Sasser* states "[i]n addition to threatening harm, a person may be found guilty of [first-degree robbery] either causing physical injury to someone other than a participant in the crime, or by simply possessing a deadly weapon." As an initial matter, *Sasser* was not deciding the matter at issue here—rather, the defendant conceded that pointing the firearm at the victim was a threat (though he did not apparently threaten to use the firearm). The issue in Sasser was whether there was sufficient evidence of the defendant's intent to commit theft. The defendant, therefore, was attempting to obtain relief for the trial court's failure to provide a lessor-included-offense instruction. Because first degree robbery may be committed by use of force that leads to physical injury, it follows that no threat is required. Therefore, the point of the Supreme Court was only that a threat is not required to commit first-degree robbery, and any gloss on the "mere possession" is dicta. Apart from being dicta, the sentence that Ingram cites, simply cannot be taken at face value because it is in direct contradiction to the statutory language and supporting commentary. As the commentary makes clear, first-degree robbery requires that all of the elements of second-degree robbery be met (in the course of committing theft, [a person] uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft), along with one of the aggravating factors, one of which is possession of a firearm. At face value, the Sasser line suggests that first-degree robbery may be committed by merely possessing a firearm in the course of committing theft. On the contrary, the perpetrator must also use or threaten the immediate use of physical force. Therefore, *Sasser* does not support Ingram's position that a hidden firearm satisfies the statute.\*

\*      This footnote in Ingram was amended on December 28, 2017, to correct typographical errors appearing in the original Memorandum Opinion and Order. *See* Docket Entry No. 54 in Lexington Criminal Action No. 5: 17-002-DCR, styled: *United States v. Ingram*.

be caused by the robber is misleading. *McNeil* was simply distinguishing first-degree robbery from first-degree assault, wherein the latter requires the injury occur from a deadly weapon or dangerous instrument. Because the physical injury aggravator factor is separate from the deadly weapon and dangerous instrument versions, it follows that those weapons need not be the cause of the injury.

To be sure, in *Hatton*, the victim was injured after being dragged by a car, and the car was driven by an accomplice, not the robber himself. The Court held that "a mere division of labor between robbers in the commission of the crime does not preclude conviction of each as a principal." 2016 WL 2604806, at *3 (quoting *Commonwealth v. Smith*, 5 S.W.3d 126, 129 (Ky. 1999)). Given that facilitation of a violent felony is sufficient under federal law to count as a predicate offense, *see United States v. Elliott*, 757 F.3d 492 (6th Cir. 2014), *Hatton's* logic stands up under federal law.

Many of the out-of-circuit cases cited by Ingram do not have, as an element, use of physical force. He also cited *Villanueva v. United States*, 191 F. Supp. 3d 178, 192 and 196 (D. CT. 2016) which held that Connecticut first-degree assault is not a violent felony, although it requires proof that the defendant caused serious physical injury, because no physical force of any kind is required to violate the statute. The *Villanueva* court held that the statute could be met by "using emotional force to compel another person to take a cyanide pill, or by distributing anthrax through a building's air conditioning system." *Id*. 192. But that case involved an assault statute, which could be accomplished by use of a substance, and did not require use or threatened use of *physical* force. The Court need not here engage in such wild hypotheticals, detached from reality, because the Kentucky statute requires use or threatened use of physical force coupled with the injury.

In conclusion, Kentucky caselaw establishes that "mere possession" of a firearm means only that the threat need not be explicit. Ingram cannot point to a single case holding that an "unseen, unused deadly weapon" is sufficient to meet the deadly weapon factor. Moreover, because Kentucky law requires, at the very least, physical injury coupled with a use-of-force element, it follows that the aggravating factor of "causing physical injury to any person who is not a participant in the crime," involves "force capable of causing physical pain or injury to another person."

[Docket Entry No. 39 in Lexington Criminal Action No. 5: 17-002-DCR, styled: *United States v. Ingram*]

Brown's second argument (*i.e.*, that his conviction involved a *conspiracy* to rob the victim and is not a violent felony) fares no better than his first. This issue is specifically addressed in the commentary to the relevant section of the United States Sentencing Guidelines. As quoted above, a "crime of violence" includes the offenses of aiding and abetting, *conspiring*, and attempting to commit such offenses. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) (commentary in the sentencing guidelines manual that interprets or explains a guideline is authoritative unless it violates the Constitution or federal statutes or is inconsistent with or is a plainly erroneous reading of that guideline), and *United States v. Greer*, 872 F.3d 790, 797 (6th Cir. 2017) (discussing the authoritative nature of the Commentary in interpreting and explaining the United States Sentencing Guidelines).

Brown cannot avoid the conclusion that the subject conviction should not be considered a crime of violence due to a different *mens rea* for conspiracy. Kentucky law provides that a person is guilty of criminal conspiracy when, having the intention of promoting or facilitating the commission of a crime, the person:

(a) Agrees with one (1) or more that at least one (1) of them will engage in conduct constituting that crime or an attempt or solicitation to commit such a crime; or

(b) Agrees to aid one or more person in the planning or commission of that crime or an attempt or solicitation to commit such a crime.

KRS § 506.040(1). The commentary to this statutory section provides that "[t]he *mens rea* required for the offense of conspiracy, both at common law and under statutory alterations, consists of two distinct parts. There must be an intent to 'combine' with others, or to 'agree,' and an intent to commit an unlawful act." *See* 1974 Kentucky Crime Commission/LRC Commentary to KRS 506.040. Thus, under Kentucky law, an individual convicted of a

Brown's second argument (*i.e.*, that his conviction involved a *conspiracy* to rob the victim and is not a violent felony) fares no better than his first. This issue is specifically addressed in the commentary to the relevant section of the United States Sentencing Guidelines. As quoted above, a "crime of violence" includes the offenses of aiding and abetting, *conspiring*, and attempting to commit such offenses. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) (commentary in the sentencing guidelines manual that interprets or explains a guideline is authoritative unless it violates the Constitution or federal statutes or is inconsistent with or is a plainly erroneous reading of that guideline), and *United States v. Greer*, 872 F.3d 790, 797 (6th Cir. 2017) (discussing the authoritative nature of the Commentary in interpreting and explaining the United States Sentencing Guidelines).

Brown cannot avoid the conclusion that the subject conviction should not be considered a crime of violence due to a different *mens rea* for conspiracy. Kentucky law provides that a person is guilty of criminal conspiracy when, having the intention of promoting or facilitating the commission of a crime, the person:

(a) Agrees with one (1) or more that at least one (1) of them will engage in conduct constituting that crime or an attempt or solicitation to commit such a crime; or

(b) Agrees to aid one or more person in the planning or commission of that crime or an attempt or solicitation to commit such a crime.

KRS § 506.040(1). The commentary to this statutory section provides that "[t]he *mens rea* required for the offense of conspiracy, both at common law and under statutory alterations, consists of two distinct parts. There must be an intent to 'combine' with others, or to 'agree,' and an intent to commit an unlawful act." *See* 1974 Kentucky Crime Commission/LRC Commentary to KRS 506.040. Thus, under Kentucky law, an individual convicted of a

conspiracy must act intentionally. And a person acts intentionally when "his conscious objective is to cause that result or engage in that conduct." KRS § 501.020. Therefore, both first-degree robbery and conspiracy to commit robbery in the first degree require that the defendant's *mens rea* be that of an intent to commit a theft by the use or threat of physical force, or while armed with a deadly weapon, or while threatening the immediate use of a dangerous weapon.

Finally, respect to this second argument, the United States correctly notes that the Model Penal Code's definition of criminal conspiracy mirrors Kentucky's criminal conspiracy definition. *See* Model Penal Code, section 5.03.[3]

For the reasons outlined above, it is hereby

**ORDERED** that Defendant Brown's objection to his designation as a Career Offender under the relevant section of the United States Sentencing Guidelines is **OVERRULED**.

---

[3] This section of the Model Penal Code defines a criminal conspiracy as follows:

> (1) **Definition of Conspiracy.** A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:
>
>   (a) agrees with such other person or persons that they or one or more of them will engage in conduct that constitutes such crime or an attempt or solicitation to commit such crime; or
>
>   (b) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

This 11th day of January, 2018.



Signed By:
*Danny C. Reeves* DCR
United States District Judge