UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 16-097-DCR |
| ) | |
| V. ) | |
| ) | |
| ARIAN LAMONT BROWN, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

*** *** *** ***

Defendant Arian Brown has filed a *pro se* motion for compassionate release that is substantially similar to a previous motion that was denied in December 2020. Because Brown has failed to identify extraordinary and compelling reasons for a sentence reduction, and because the factors under 18 U.S.C. § 3553(a) do not support reducing his sentence, his current motion will be denied.

I.

Brown pleaded guilty to possession with intent to distribute 40 grams or more of a mixture or substance containing a detectable amount of fentanyl and possession with intent to distribute heroin. On January 12, 2018, he was sentenced to 330 months of imprisonment on each count, to run concurrently, to be followed by eight years of supervised release. [Record No. 133] Brown's conviction and sentence were affirmed on appeal and his motion for relief under 28 U.S.C. § 2255 also was denied. [Record Nos. 167, 190, 191]

Brown filed a *pro se* motion for compassionate release under 18 U.S.C § 3582(c)(1)(A) and the First Step Act of 2018 in December 2020. [Record No. 211] He argued that he was

entitled to a substantial sentence reduction based on a variety of health problems and a change in the law under which should no longer be considered a career offender under the United States Sentencing Guidelines. The Court denied the motion as well as Brown's motion for reconsideration. The United States Court of Appeals for the Sixth Circuit affirmed this Court's denial of Brown's request for compassionate release. [Record Nos. 221, 231]

Brown's current motion appears largely indistinguishable from the motion he filed in 2020. He again cites COVID-19, underlying health issues, and family and childcare concerns. As the Court has explained previously, these concerns as alleged by Brown do not constitute extraordinary and compelling reasons for release or a sentence reduction. To the extent Brown asserts he is entitled to a sentence reduction based on nonretroactive changes in sentencing law, the Sixth Circuit recently held that such legal developments do not factor into the "extraordinary and compelling" analysis. *United States v. McCall*, , --F.4th--, 2022 WL 17843865 (6th Cir. Dec. 22, 2022) (en banc).

## II.

The Court may reduce a defendant's sentence if it finds that "extraordinary and compelling reasons" warrant a reduction, a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and the 18 U.S.C. § 3553(a) factors, to the extent they apply, support a reduction. § 3582(c)(1)(A); *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). Because no policy statement applies when a defendant files his own motion for a sentence reduction, the second step does not apply here. *United States v. Jones*, 980 F.3d 1098, 1110 (holding that, under the First Step Act of 2018, U.S.S.G. § 1B1.13 applies only to motions filed by the Bureau of Prisons).

District courts have discretion to define what constitutes an extraordinary and compelling circumstance in a particular case. *United States v. Elias*, 984 F.3d 516, 519-20 (6th Cir. 2020) (citations omitted). While the Court is not bound by U.S.S.G. § 1B1.13, "extraordinary and compelling" most obviously covers changes in a defendant's personal situation like those enumerated in the guidelines, i.e., exceptional health, age, or family circumstances. *McCall*, 2022 WL 17843865, at *9, *14.

Brown alleges the same medical complaints as in his previous motion, including hyperthyroidism, irregular heartbeat, anterior mediastinal mass, moderate asthma, and hypertension. He contends that these conditions and his race, put him at a higher risk of becoming seriously ill or dying from COVID-19. He received two doses of the Pfizer vaccine in late 2021. [Record No. 232-1, p. 7] Brown acknowledges that vaccines typically reduce severe complications from COVID-19, but argues "there are no guarantees."

Brown also provides new medical evidence concerning his thyroid condition. Specifically, he has tendered documentation from Quest Diagnostics, indicating that his thyroglobulin was out of range when tested on October 2, 2021. *Id.* at p. 3. According to Brown, this test revealed "cancer to be in the out of range column." [Record No. 232, p. 2] He has not provided any documentation to support such a diagnosis, however. Further, he suggests that the Bureau of Prisons is responding to his thyroid condition with appropriate medical care, which may include "biopsies [and] surgery."

To the extent Brown relies on the COVID-19 pandemic as a basis for seeking compassionate release, a "defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747,

751 (6th Cir. 2021). Further, Brown's institution of confinement (FCI Gilmer) currently has zero positive COVID-19 cases among inmates and only two among staff members.[1]

Brown also argues that family circumstances constitute extraordinary and compelling reasons warranting his release. His parents, who are in their mid-sixties, began caring for his two children, who are 19 (A.B.) and 5 years old (A.P.), upon Brown's incarceration.

Brown tendered a supplement on November 17, 2022, reporting that his "entire family has lost custody of all children" after his sister's boyfriend tragically killed Brown's 10-year-old nephew (L.H.) while in the custody of Brown's parents. [Record No. 247] A.P was then placed with her mother, Abby Payton, who, according to Brown, subsequently relinquished custody of A.P. to Payton's grandparents. Brown reports that A.P. was admitted to Charter Ridge Hospital for a mental health evaluation on or around October 3, 2022, after grabbing Payton's grandmother's knee following surgery. Brown also alleges that A.P. threatened to kill herself.

Brown asserts that Payton's grandparents are "too elderly and/or infirmed [sic] to care for A.P. at this juncture in their lives." *Id.* at p. 3. While incapacitation of the sole caregiver of the defendant's minor child can constitute an extraordinary or compelling circumstance for release, the defendant must demonstrate that the caregiver is actually incapacitated and that the defendant would be the only caregiver for the child. *United States v. Davis*, 2021 WL 829367, at *7 (E.D. Tenn. Mar. 4, 2021) (citing *United States v. Cole*, 2021 WL 194194, at *2 (E.D. Mich. Jan. 20, 2021)). Brown does not make any particular factual allegations or provide

---

[1] Federal Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus/ (last accessed Dec. 28, 2022).

any evidence suggesting that Payton's grandparents are incapacitated. He reports that they are 64 and 80 years old, but otherwise there is no suggestion they are unable to care for A.P.

Brown also has not demonstrated that he would be his daughter's only alternative caretaker. Notably, Brown has not provided any documentation indicating that Payton has legally relinquished custody of A.P. Further, he has not alleged the unavailability of other members of Payton's family who would be able to care for A.P. Brown asks this Court to direct the United States Probation Office to investigate his claim or to direct Charter Ridge Hospital to produce A.P.'s medical records. But Brown has not explained why the basic facts needed to support his family circumstances claim would not be within his knowledge. The Court declines to expend additional resources with respect to this claim when Brown has not identified general facts indicating he would be entitled to relief.

And contrary to Brown's suggestion, he has served a relatively small portion of his sentence—his projected release date is October 14, 2042.[2] [Record No. 232, p. 9] Brown also reports that he has been a model inmate and has spent over 800 hours in various educational courses since being in custody. The Court commends Brown regarding these efforts and encourages him to continue with respect to such endeavors. But such rehabilitative considerations on their own, or in conjunction with the other reasons given here, do not constitute extraordinary and compelling reasons for a sentence reduction.

Finally, Brown continues to argue that he is entitled to relief under *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019), in which the Sixth Circuit held that attempted drug trafficking offenses are not "controlled substances offenses" for purposes of the career

---

[2] Federal Bureau of Prisons, *Find an inmate*, https://www.bop.gov/inmateloc/ (last accessed Dec. 28, 2022).

offender enhancement of U.S.S.G. § 4B1.1 He asserts that if he were sentenced after the decision in *Havis*, he would no longer be considered a career offender and his sentence would be considerably shorter. Perhaps. But the Sixth Circuit made clear in *McCall*, 2022 WL 17843865, at *15, that nonretroactive legal developments such as the decision in *Havis* do not factor into the extraordinary and compelling analysis. While district courts are free to consider such changes in balancing the § 3553(a) factors, defendants seeking compassionate release must demonstrate extraordinary and compelling reasons independent of such legal developments. *Id.* n.8.

### III.

The Court adopts its previous findings with respect to the factors under 18 U.S.C. § 3553(a). [*See* Record No. 212, pp. 8-10.] Brown now argues that the Court should have imposed a lower sentence due to the lack of guidance he received in his youth. However, there is no indication that Brown raised this issue at sentencing. Further, during his presentence investigation, Brown reported having been reared in the home of his mother and father with his basic needs being met and suffering no forms of abuse. Although he was raised in a "bad neighborhood," he described his family as "close" and his childhood as "pretty good." The Court considered the defendant's background during his sentencing hearing and Brown has not identified any information that would change the Court's earlier analysis.

Brown also contends that his sentence creates an unwarranted sentencing disparity among his codefendants and defendants with similar records who are guilty of similar conduct. Brown's only codefendant in this matter is Brittany Glisson who pleaded guilty to one count of conspiring to distribute heroin. While Glisson's conduct undoubtedly was serious, she played a significantly lesser role in the criminal activity than Brown. Further, Glisson's

criminal history was II, as opposed to Brown, who had a criminal history category of V. And sentencing disparities concerns nationwide statistics, as opposed to comparing the defendant's sentence with another individual sentenced in the same case.

In short, the Court remains convinced that the sentence imposed remains appropriate, particularly given Brown's extensive criminal history and the severity of the crimes of conviction. In particular, the Court previously noted that Brown's criminal history score of eight significantly underrepresents the gravity of his past conduct and a sentence of 330 months' imprisonment remains sufficient, but not greater than necessary, to serve the purposes of § 3553(a).

### IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that the defendant's motion for compassionate release [Record No. 232] is **DENIED**.

Dated: December 29, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky